IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TIM L. NEFF,** *et al.*,

    **Plaintiffs,**

vs.                                         Civil Action 2:11-cv-1136
                                                     Judge Sargus
                                                     Magistrate Judge King

**FLAGSTAR BANK, FSB,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of the *Motion of Plaintiffs Tim and Bobbie Neff to Compel Discovery* ("*Motion to Compel*"), Doc. No. 35, defendant's *Memorandum in Opposition to Motion to Compel Discovery* ("*Defendant's Response*"), Doc. No. 37, and *Plaintiffs' Reply*, Doc. No. 39. For the reasons that follow, plaintiffs' *Motion to Compel* is **GRANTED in part** and **DENIED in part**.

### I. Background

The Court has previously set forth the background of this case:

On September 30, 2008, the plaintiffs, Tim L. and Bobbie K. Neff, executed a note in favor of the defendant Flagstar Bank, FSB ("Flagstar"), payment of which was secured by a mortgage to Mortgage Electronic Registration System, Inc. ("MERS") as nominee for Flagstar, against real property located at 174 Salem Avenue in Fredericktown, Ohio ("Property"). Because of financial difficulties, the Neffs contacted Flagstar in September 2009 about modifying their loan, and Flagstar requested that the Neffs complete and submit certain documents toward that end. The Neffs completed and submitted the documents. In October 2009, Mr. Neff was injured during the course of his employment. Flagstar requested that the Neffs send additional paperwork related to a potential loan modification, and they complied.

On February 15, 2010, Flagstar sent the Neffs a letter offering them a "reinstatement arrangement" and indicated that they would be reviewed for a loan modification after they made four payments of $1,116.92.  (Compl. ¶ 28, Ex. A.)  The letter provides that the Neffs' "account will be allowed to remain delinquent" so long as they make each required payment on or before March 1, April 1, May 1, and June 1, 2010.  (Compl., Ex. A at 1.)  After each payment was made, the Neffs were to submit additional documents so that Flagstar could determine "alternatives to cure the delinquency."  *Id.*

The Neffs signed the letter on February 19, 2010 and sent in the first payment contemplated by it.  In a telephone conversation in April 2010, "Flagstar told Mr. Neff to make the remaining payments according to the [letter], and [Flagstar] would offer a loan modification after determining affordability." (Compl. ¶ 33.)

The Neffs made the May payment.  On May 11, 2010, Flagstar sent the Neffs a letter informing them that they were in default on their loan.

The Neffs submitted their June 2010 payment and, in another telephone conversation that month, Flagstar represented to Mr. Neff that it would provide a loan modification agreement.

On August 31, 2010, Flagstar "sent the Neffs a letter requesting more documents, which they next promptly sent." *Id.* ¶¶ 44–45.  "[O]n September 14, 2010, [Flagstar] sent the Neffs another letter indicating that they were still in default." *Id.* ¶ 46.  Mr. Neff contacted Flagstar, which again requested documents.  Mr. Neff supplied the requested documents.

In November 2010, Mr. Neff called Flagstar, which again informed Mr. Neff that he needed to continue to submit paperwork, and that Flagstar was reviewing his file for a modification.

On December 16, 2010, a law firm, on behalf of Flagstar, sent a letter to the Neffs indicating that . . . their loan was in default and that they owed Flagstar $151,351.10.  In January 2011, Mr. Neff called Flagstar to ask about the status of the contemplated loan modification.  Flagstar indicated that it was working on the modification.

On January 21, 2011, Flagstar filed a complaint for foreclosure in the Knox County, Ohio, Court of Common

2

Pleas, Case Number 11FR01-0042 ("Foreclosure Action").

On February 22, 2011, Flagstar sent the Neffs a letter requesting more documents. Specifically, Flagstar requested that the Neffs send a financial form and their last two paystubs. Mr. Neff submitted the requested documents.

There was no contact between the parties until May 2011 when Mr. Neff telephoned Flagstar. At that time, Flagstar informed him that it needed to continue to update his file with more financial paperwork. Mr. Neff provided the requested paperwork.

The Neffs aver that, "[g]enuinely believing that [Flagstar] was completing a loan modification for the[m], the Neffs did not answer the state foreclosure action." *Id.* ¶ 65. In July 2011, default judgment was entered against the Neffs in the Foreclosure Action.

In August 2011, Mr. Neff called Flagstar to ask about the loan modification. Flagstar requested that Mr. Neff send more paperwork and stated that it was working on a new agreement for the Neffs.

In September 2011, Flagstar called the Neffs and "asked Mr. Neff to send more paperwork and [indicated] that if the property is foreclosed on, although a default judgment had already been entered, that Mr. Neff should call [Flagstar]." *Id.* ¶ 73. "The Neffs understood 'foreclosure' to mean the scheduled sale of the property, not realizing the implications of Flagstar having already secured a default judgment against them." *Id.* ¶ 74. Mr. Neff asked Flagstar whether the Neffs should retain counsel to help resolve . . . their situation with Flagstar. Flagstar told Mr. Neff not to obtain counsel, that it could do the same thing an attorney could do, and that counsel was not necessary.

On September 14, 2011, the Court of Common Pleas in Knox County ordered a sheriff's sale of the Neffs' home. In October 2011, Mr. Neff received a notice of the foreclosure sale through the newspaper, which indicated that their home would be sold on December 9, 2011. Mr. Neff called Flagstar, and was told that he needed to send more financial documents to complete the loan modification, which he did.

On November 16, 2011, the Neffs retained counsel. On November 23, 2011, counsel for the Neffs filed in the Knox

3

> County Court of Common Pleas a motion for relief from judgment and a motion to stay the sheriff's sale. On December 6, 2011, Flagstar opposed those motions. On December 11, 2012, the state court entered on its docket an "express[ ] confirm[ation]" that it overruled the Neffs' motion for relief from judgment and stay of sheriffs sale.
>
> On December 20, 2011, the Neffs filed the instant action. The Neffs bring federal and state claims, alleging that this Court possesses federal question jurisdiction over its federal claim, and supplemental and diversity jurisdiction over its state law claims.
>
> On February 17, 2012, Flagstar moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 3), which this Court granted (Doc. No. 17). The Neffs appealed that decision, and the Sixth Circuit reversed and remanded.

*Neff v. Flagstar Bank, FSB*, No. 2:11-cv-1136, 2013 WL 3872115, at *1-2 (S.D. Ohio July 25, 2013). On remand, this Court dismissed plaintiffs' claim for violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.*, and permitted plaintiffs' state law claims for fraudulent misrepresentation and promissory estoppel to proceed. *See Opinion and Order*, Doc. No. 28. This matter is now before the Court for consideration of plaintiffs' *Motion to Compel*.

**II.  Standard**

Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when a party fails to provide proper response to requests for production of documents under Rule 34. Fed. R. Civ. Pro. 37(a)(3)(B). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Martin v. Select Portfolio Serving Holding Corp.*, No. 1:05-cv-273, 2006 U.S. Dist. LEXIS 68779, at *2 (S.D. Ohio

4

Sept. 25, 2006) (citing *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 154, 159 (D.D.C. 1999)).

Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance for discovery purposes is extremely broad. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 500-01 (6th Cir. 1970). However, "district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)). *See also Lewis*, 135 F.3d at 402 (determining the proper scope of discovery falls within the broad discretion of the trial court). In determining the proper scope of discovery, a district court balances a party's "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle & Mfg. Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)).

Finally, the party moving to compel discovery must certify that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to

obtain it without court action." Fed. R. Civ. P. 37(a)(1).  *See also* S.D. Ohio Civ. R. 37.2.

**III. Discussion**

This discovery dispute arises out of defendant's alleged deficient responses to two interrogatories and four requests for production of documents.  Specifically, plaintiffs argue that defendant failed to adequately respond to Interrogatories 9 and 13 and failed to make any response to Document Requests 44, 50, 51, 52, and 53.  *Motion to Compel*, p. 3.  Interrogatory 9 provides: "State what actions You took to set up a face-to-face meeting with Plaintiffs prior to initiating the State Foreclosure Action, including the dates said actions were taken."  *Interrogatories 9, 13*, attached to *Motion to Compel* as Exhibit A, p. 2.  Interrogatory 13 provides:

> "Please provide a detailed explanation of Defendant's decision to foreclose on the Home rather than modify the terms of Plainitffs' Loan, including:
>
> a) Identifying Fully the person or persons who made the decision to foreclose on the Home rather than modify the terms of Plaintiffs' Loan;
>
> . . .
>
> b) The date Defendant decide [sic] it was going to foreclose on the Home rather than modify the terms of Plaintiffs' Loan; and
>
> . . .
>
> c) The reasoning behind Defendant's decision to foreclose on the Home rather than modify the terms of Plaintiffs' loan.

*Id*. at pp. 3-4.  Document Request 44 seeks: "A complete copy of the Investor Loss Mitigation and Loan Modification Guidelines related to

6

this Loan." *Requests for Production of Documents 44, 50-53*, attached to *Motion to Compel* as Exhibit B, p. 2.  Finally, Document Requests 50-53 seek:

> 50.  A copy of all written loss-mitigation rules and work-out procedures related to any defaults regarding this Loan and similar loans.
>
> 51.  Copies of any agreements You have signed with any member or members of the United States Congress with respect to the implementation of Loss Mitigation Rules and Policies for any type of mortgage product.
>
> 52.  All Documents that support Your compliance with all conditions precedent before initiating the State Foreclosure Action, including but not limited to:
>
> a.  All Documents mailed to Plaintiff that comply with Covenant 7 of the Mortgage;
>
> b.  All Documents mailed to Plaintiff that comply with paragraph 6 of the Note;
>
> c.  All Documents provided to Plaintiff by Defendant that comply with 24 C.F.R. 203; and
>
> d.  Documents utilized internally by Plaintiff to ensure compliance with 24 C.F.R. 203.
>
> 53.  All manuals or Documents describing the Procedure used by Defendant to ensure compliance with the conditions precedents located within the Mortgage and Note.

*Id*. at p. 3.

The *Motion to Compel* seeks "discovery from Defendant on the underwriting guidelines of Defendant's foreclosure alternative programs available from 2009 to 2011" and "information and documents on Defendant's efforts to comply with the Federal Housing Administration ('FHA') guidelines incorporated into the note and mortgage."  *Motion to Compel*, p. 3.

As an initial matter, defendant argues that plaintiffs' *Motion to*

*Compel* should be denied because plaintiffs "never formally requested the documents they now seek" and because they failed to make a good faith effort to resolve this discovery dispute prior to filing the *Motion to Compel*. *Defendant's Response*, pp. 2, 7, 12-14. Without addressing the merits of defendant's arguments, the Court concludes that the parties are at impasse on the matter and that judicial intervention is necessary to resolve this discovery dispute. Notably, discovery is still proceeding and, after conducting a discovery conference on September 25, 2013, the Court directed plaintiffs to file a motion to compel. *See Order*, Doc. No. 34. The Court will therefore address the substance of plaintiffs' *Motion to Compel*.

As discussed *supra*, plaintiffs seek to compel "discovery from Defendant on the underwriting guidelines of Defendant's foreclosure alternative programs available from 2009 to 2011" and "information and documents on Defendant's efforts to comply with the [FHA] guidelines incorporated into the note and mortgage." *Motion to Compel*, p. 3. The parties disagree as to the relevance of the requests. Defendant argues that the requested discovery is not "relevant to any claim or defense at issue in this case." *Defendant's Response*, p. 8. Specifically, defendant argues that "whether or not the Neffs actually qualified for a specific loan modification program that Flagstar had is not the issue." *Id*. at p. 9. Defendant takes the position that plaintiffs' claims survived defendant's motion to dismiss only "on the assumption that 'but for' Flagstar's statements that it would modify [plaintiffs'] loan, the Neffs would have cured their default 'without

8

Flagstar's assistance.'" *Id*. at p. 11 (citations and emphasis omitted). "The actual content of Flagstar's programs and the validity of defenses that the Neffs could have raised in the Foreclosure Action," defendant argues, "will not make proof of that issue before the Court more or less likely." *Id*. Defendant's argument is without merit.

The *Complaint*, Doc. No. 1, asserts claims for fraudulent misrepresentation and promissory estoppel. In Ohio,[1]

> [t]he elements of fraud or fraudulent misrepresentation are (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) followed by justifiable reliance upon the representation or concealment by the other party, and (6) a resulting injury proximately caused by the reliance.

*Funk v. Durant*, 799 N.E.2d 221, 224 (Ohio App. 5 Dist. 2003) (citing *Friedland v. Lipman*, 429 N.E.2d 456 (Ohio App. 8 Dist. 1980)). Promissory estoppel requires a showing of: "(1) a clear and unambiguous promise; (2) reliance on that promise; (3) reliance that was reasonable and foreseeable; and (4) damages caused by that reliance." *Current Source, Inc. v. Elyria City Sch. Dist.*, 813 N.E.2d 730, 737 (Ohio App. 9 Dist. 2004) (citations omitted).

As previously determined by the Court in resolving defendant's motion to dismiss,

---

[1] When sitting in diversity, this Court applies the substantive law the of the forum state. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820 (6th Cir. 1990)).

9

> the Neffs specifically pled that a representative of Flagstar informed them on numerous occasions, specifically laid out in the complaint, that a loan modification was being considered, for the Neffs to make certain payments, to continue to provide the requested information, and to not obtain counsel for the Foreclosure Action. The Neffs suggest that Flagstar's representations were false in that it had no intention of modifying the loan, just in keeping the Neffs from responding in foreclosure or seeking to remedy the delinquency through other avenues so that it could obtain the Property. The Neffs aver that they relied on these representations by taking no action in the Foreclosure Action, in which a default judgment had been entered but no sheriff sale had yet been ordered or conducted. The Neffs had previously arranged certain payments with Flagstar, which they made. The Court can reasonably infer that absent Flagstar's representations, the Neffs would have addressed the delinquency of their mortgage and/or the Foreclosure Action without Flagstar's assistance but did not do so in detrimental reliance on Flagstar's representations.

*Neff*, 2013 WL 3872115 at *5.

As noted *supra*, to prevail on their fraudulent misrepresentation claim, plaintiffs must prove, *inter alia*, that there was a material representation of fact that was "made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred." *See Funk*, 799 N.E.2d at 224 (citations omitted). Evidence of defendant's foreclosure alternative guidelines and, specifically, whether plaintiffs qualified for an alternative under defendant's guidelines, could serve as evidence of defendant's intention (or lack thereof) to modify plaintiffs' loan. Whether defendant intended to modify plaintiffs' loan when it made the alleged statements that it would, *see e.g.*, *Complaint*, ¶¶ 88, 112, is therefore relevant to whether the alleged statements were "made falsely, with knowledge of its falsity,

10

or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred." Similarly, evidence of a viable defense in the Foreclosure Action is relevant to whether the Neffs would (or could) have addressed the delinquency of their mortgage and/or the Foreclosure Action without Flagstar's assistance and whether they suffered injury proximately caused by their reliance on the alleged statements. Discovery related to "Defendant's efforts to comply with the [FHA] guidelines incorporated into the note and mortgage," which defendant concedes is related to the Neffs' ability to defend the Foreclosure Action, *see Defendant's Response*, p. 11, is therefore relevant in this action. It follows, then, that this information falls within the ambit of discoverable information. *See* Fed. R. Civ. P. 26(b).

plaintiff seek an award of their expenses, including attorney's fees, incurred in connection with the *Motion to Compel*. A court must ordinarily award a movant's reasonable expenses, including attorney's fees, if a motion to compel is granted. Fed. R. Civ. P. 37(a)(5)(A). However, a court should not award expenses if, among other things, the opposing party's nondisclosure was substantially justified or other circumstances make an award of expenses unjust. *Id*. A court is vested with wide discretion in determining an appropriate sanction under Rule 37. *See Nat'l Hockey League v. Metro. Hockey Club,* 427 U.S. 639 (1976).

Defendant argues that an award of expenses is unwarranted because, *inter alia*, plaintiffs failed to make a reasonable attempt to

11

resolve this discovery dispute prior to filing the *Motion to Compel*. *Defendant's Response*, pp. 3, 12-14.  This Court agrees.

Plaintiff sent only one letter to defense counsel addressing the substance of this discovery dispute prior to seeking Court intervention.  *See Motion to Compel*, Exhibit H; *Defendant's Response*, Exhibit K.  Notably, that letter fails to address Document Requests 50, 52, or 53, or "information and documents on Defendant's efforts to comply with the [FHA] guidelines incorporated into the note and mortgage," issues that plaintiffs pursue in this motion.  *See Motion to Compel*, pp. 1-3.  Moreover, defendant responded to plaintiffs' letter with substantive responses and expressly sought further clarification from plaintiffs regarding their position, *see Motion to Compel*, Exhibit I; *Defendant's Response*, Exhibit L, but plaintiffs never responded to that request.

Under the circumstances, the Court cannot conclude that plaintiffs made a good faith effort to confer with defendant, or that plaintiffs exhausted all extrajudicial means for the resolution of this dispute, prior to seeking Court intervention.  *See* Fed. R. Civ. P. 37(a)(1); S.D. Ohio Civ. R. 37.1.  Although the Court has overlooked that deficiency in considering the merits of the *Motion to Compel*, nevertheless, an award of expenses would be unjust under these circumstances.

**WHEREUPON**, plaintiffs' *Motion to Compel*, Doc. No. 35, is **GRANTED in part** and **DENIED in part**, consistent with the foregoing.

The Court suspended the expert report production dates pending

resolution of plaintiffs' *Motion to Compel*.  See *Order*, Doc. No. 34. The *Scheduling Order*, Doc. No. 25, is therefore **MODIFIED** as follows:

    Primary expert reports must be produced by plaintiffs no later than December 31, 2013 and by defendant (which expects to use only rebuttal experts) no later than February 19, 2013.

    All discovery must be completed by February 28, 2013.

    Motions for summary judgment may be filed no later than March 31, 2014.


October 30, 2013                                *s/Norah McCann King*
                                                    Norah M$^{c}$Cann King
                                        United States Magistrate Judge