UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TIM L. NEFF et al.,

    Plaintiffs,

v.

FLAGSTAR BANK, FSB,

    Defendant.

Case No. 2:11-cv-1136
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 48), and Plaintiffs' Motion for Oral Argument (ECF No. 56). For the reasons that follow, the Court **GRANTS** Defendant's Motion and **DENIES** Plaintiffs' Motion.

I.

On September 30, 2008, the plaintiffs, Tim L. and Bobbie K. Neff, executed a note in favor of the defendant Flagstar Bank, FSB ("Flagstar"), payment of which was secured by a mortgage to Mortgage Electronic Registration System, Inc. as nominee for Flagstar, against real property located at 174 Salem Avenue in Fredericktown, Ohio. Approximately one year after taking possession of the Salem Avenue home, the Neffs were unable to make the agreed-upon payments and contacted Flagstar about modifying their loan. (Dep. of Tim L. Neff ("Neff Dep.") at 34, 41; ECF No. 51.) That first contact was in September 2009, and Flagstar asked the Neffs to complete and submit certain documents so that Flagstar could consider the Neffs' request for a loan modification. (Neff. Dep. at 36.) Flagstar also told Mr. Neff to send updates

to his documents every ninety days. (Neff Dep. at 51.) The Neffs completed and submitted the documents.

In October 2009, Mr. Neff was injured during the course of his employment. For three months he received sick pay and then applied for temporary benefits from the Ohio Bureau of Workers' Compensation ("BWC").

For nearly the next two years, Flagstar solicited information from the Neffs in an attempt to provide to them a permanent loan modification. During this time period, the Neffs did not pay their mortgage except for four reduced amount payments pursuant to a temporary forbearance that Flagstar had extended to them. During this time period, the Neffs provided all of the requested information and timely updated it as required by Flagstar. Mr. Neff testified that Flagstar told him that it had many different types of loan modifications available and that it would "find one to suit" him.[1] (Neff Dep. at 53.)

On December 16, 2010, a law firm, on behalf of Flagstar, sent a letter to the Neffs indicating that their loan was in default and that they owed Flagstar $151,351.10. (Neff Dep. at 91–92, Ex. 25.) The letter next informed the Neffs that the law firm had been instructed to proceed with foreclosure. Mr. Neff telephoned Flagstar after receiving the letter and he was told that the letter "is a formality" that Flagstar "goes through right before they foreclose on your home and that when it's getting close to being foreclosed on, they have the company send this letter out to you." (Neff Dep. at 92–93.) Mr. Neff asked the Flagstar representative during this telephone conversation if the Neffs should retain an attorney, "[a]nd the gentleman said no, we

---

[1] Flagstar sites to testimony of Mr. Neff in which he admits that he understood that Flagstar could propose a modification that he would find unacceptable, that there was "reasonable doubt" they would qualify for a modification because "not everyone qualifies," and that, while the Neffs remained "hopeful" that they would receive a modification, they understood that there was "no guarantee" that they would. (Neff Dep. at 65, 89, 99–100.) However, Mr. Neff also testified that he was told that he would receive a loan modification. (Neff Dep. at 53.) At this juncture, the Court will make all justifiable inferences in the Neffs' favor and accept as true Mr. Neff's testimony that he was told that Flagstar would find a loan modification for him. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

2

can do everything an attorney could do for you and it won't cost you no money." (Neff Dep. at 93.)

The following month, January 2011, Mr. Neff called Flagstar to ask about the status of the requested loan modification. Flagstar indicated that it was still working on the modification. In a later telephone conversation, a Flagstar representative informed Mr. Neff that his receipt of temporary total disability income as opposed to permanent disability payments was an issue in the bank's ability to offer a loan modification. (Neff Dep. at 60.) Also in January 2011, Flagstar "dual-tracked" the Neffs' loan. (Dep. of Flagstar Corp. Rep. Jason Aaron Hamann ("Hamann Dep.") at 97–98; ECF No. 52.) This means that Flagstar pursued foreclosure and simultaneously continued to search for a loan modification that would suit the Neffs. (Hamann Dep. at 97–98.)

On January 21, 2011, Flagstar filed a complaint for foreclosure in the Knox County, Ohio, Court of Common Pleas, Case Number 11FR01-0042 ("Foreclosure Action"). The Neffs had been previously sued in a foreclosure action filed by another lender in 2004. (Neff Dep. at 21.) The Neffs had legal counsel at the time and chose not to defend the foreclosure action, permitting a default judgment to be entered against them. (Neff Dep. at 17–18 .) In the Foreclosure Action, the Neffs too did not file an answer to the complaint, testifying that they believed that Flagstar was going to provide to them a loan modification.

On February 22, 2011, Flagstar sent the Neffs a letter requesting that they send a financial form and their last two paystubs. Mr. Neff submitted the requested documents. There was no contact between the parties until May 2011 when Mr. Neff telephoned Flagstar. At that time, Flagstar informed him that it needed to continue to update his file with more financial paperwork and Mr. Neff was also told that he qualified for second four-month forbearance. Mr. Neff provided the requested paperwork. Flagstar did not offer the temporary forbearance,

3

determining that it was only available to borrowers who were less than twelve months in default, which disqualified the Neffs. (Hamann Dep. at 41.)

On July 8, 2011, Flagstar moved for default judgment in the Foreclosure Action, which the state court granted on July 12, 2011. Mr. Neff testified that after he received the motion for default judgment, he spoke with a Flagstar representative who told him that thirty days out from the foreclosure date, his file would "go[] to the top and they work extra hard on getting you modified." (Neff. Dep. at 105.)

In August 2011, Mr. Neff provided to Flagstar a letter from the BWC dated August 4, 2011, which indicated that his receipt of temporary benefits would expire on August 31, 2011. (Neff Dep. at 106, Ex. 19.) Flagstar contacted Mr. Neff regarding this letter, indicating that it failed to provide proof of permanent income. (Neff Dep. at 107–109.) Mr. Neff told Flagstar that he was unable to provide that proof because the BWC's guidelines required him to be reevaluated every three to six months in order to continue receiving temporary benefits. During this conversation, Mr. Neff alleges that he was told by the representative that Flagstar "was working on a new agreement." (Compl. ¶ 71.)

On September 14, 2011, the Court of Common Pleas in Knox County ordered a sheriff's sale of the Salem Avenue property. In October 2011, Mr. Neff received a notice of the foreclosure sale through the newspaper, which indicated that the property would be sold on December 9, 2011.

On November 14, 2011, Flagstar sent a letter to the Neffs advising them that their request

4

for a loan modification was denied because they had failed to provide sufficient documentation to be evaluated for a permanent modification. (Neff Dep. at 110, Ex. 29.) Mr. Neff testified that when he telephoned Flagstar he was told that "documentation was missing" from his file. (Neff Dep. at 110–111.) Mr. Neff sent to Flagstar the missing documents.

On November 16, 2011, the Neffs retained legal counsel. On November 23, 2011, counsel for the Neffs filed in the Knox County Court of Common Pleas a Motion for Relief from Judgment Under Rule 60(B) of the Ohio Rules of Civil Procedure. (ECF No. 3-4.) The Neffs also moved to stay the sheriff's sale. On December 6, 2011, Flagstar opposed those motions. On December 9, 2011, the property was sold at a sheriff's sale, and on April 2, 2012, the state court confirmed the sale.

On December 20, 2011, the Neffs filed the instant action alleging that Flagstar promised them a loan modification, that they detrimentally relied upon that promise, and that they lost their home because of Flagstar's actions. (ECF No. 1.) The Neffs contend that Flagstar failed to help them modify their loan so that it could repossess their home as "quickly and cheaply as possible," which is why it mislead them in the loan modification process and informed them that it was unnecessary for them to retain an attorney to represent them in the Foreclosure Action. (Mem. in Opp. at 4.) In the complaint, the Neffs allege a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, fraudulent misrepresentation, and promissory estoppel.[2] This Court possesses federal question jurisdiction over the Neffs' federal claim and supplemental and diversity jurisdiction over their state law claims.

---

[2] The Neffs style this claim as a "breach of contract and promissory estoppel." However, the Neffs only allege facts to support a claim of promissory estoppel. Moreover, the parties make no argument in their briefing related to a breach of contract claim and refer only to promissory estoppel. Therefore, the Court accepts this claim as one for promissory estoppel.

5

On February 17, 2012, Flagstar moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 3), which this Court granted (ECF No. 17). The Neffs appealed that decision and the Sixth Circuit reversed and remanded in *Neff v. Flagstar Bank, FSB*, 520 F. App'x 323 (6th Cir. 2013). (ECF No. 22.) After remand, this Court reconsidered Defendant's Motion to Dismiss, dismissing the Neffs' FDCPA claim and denying dismissal of their state law claims. (ECF No. 28.)

Flagstar has now moved for summary judgment on the Neffs' remaining state law claims. (ECF No. 48.) That motion is ripe for review. (ECF Nos. 54, 55.) The Neffs have requested oral argument on Flagstar's motion. (ECF No. 56.) That motion is unopposed.

## II.

The Neffs filed a motion requesting oral argument in this case, indicating that it presents complex factual and legal issues. Pursuant to the Local Rules for the Southern District of Ohio, parties may apply to the Court for oral argument if "oral argument is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented." S.D. Ohio Civ. R. 7.1(b)(2). Parties should apply "by including the phrase 'ORAL ARGUMENT REQUESTED' (or its equivalent) on the caption of the motion or on a memorandum." *Id.* The parties must also "succinctly explain[]" the grounds for such request. *Id.* "If the Court determines argument or a conference would be helpful, the Court will notify all parties." *Id.* Whether to grant or deny a request for oral argument is left to the sound discretion of the trial court. *See Whitescarver v. Sabin Robbins Paper Co.*, Case No. C-1-03-911, 2006 U.S. Dist. LEXIS 51524, *5–6 (S.D. Ohio July 27, 2006).

6

In the present litigation, the Court finds that oral argument is not deemed to be essential to the fair resolution of this case. Accordingly, the Court **DENIES** the Neffs' Motion for Oral Argument.

### III.

Flagstar moves for summary judgment on the Neffs' claims for fraudulent misrepresentation and promissory estoppel.

### A. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

### B. Analysis

Flagstar contends that it is entitled to summary judgment on the Neffs' remaining claims based upon the doctrines of res judicata and/or *Rooker-Feldman* or because the Neffs have failed

7

to raise any genuine issue of material fact as to either claim. Because the Court agrees with Flagstar that the Neffs' claims are barred by the doctrine of res judicata, it need not address the remaining arguments. As to res judicata, the Neffs assert that "this Court rejected and the Sixth Circuit tacitly rejected" application of the doctrine to this case. (Mem. in Opp. at 5.) This Court, however, disagrees.

Previously, Flagstar moved for dismissal of this action. In its Opinion and Order granting Flagstar's motion, the Court found that the doctrine of res judicata required dismissal of all of the Neffs' claims. But, in its Motion to Dismiss Flagstar had not requested dismissal based on this doctrine and instead had raised res judicata in its opposition to the Neffs' Motion for a Temporary Restraining Order ("TRO"), which was briefed during the same time period. In the Neffs' Reply in Support of their Motion for a TRO, they responded to Flagstar's res judicata argument. This Court incorporated those arguments into its ruling on Flagstar's Motion to Dismiss. The Neffs appealed the decision and the Sixth Circuit reversed and remanded the case. While "the Supreme Court has indicated that a court may take the initiative to assert the res judicata defense sua sponte in 'special circumstances[,]'" the appellate court found that this case did not present such circumstances. *Neff*, 520 F. App'x at 327. Consequently, this Court will address the res judicata issue, which is now fully briefed before it.

This Court "must give the same effect to a state court judgment that would be given by a court of the state in which the judgment was rendered." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). Therefore, when determining whether to give preclusive effect to a prior state court judgment, a federal court must look to the law of the rendering state to determine whether and to what extent that prior judgment should receive

8

preclusive effect in a federal action. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Thus, this Court looks to Ohio law to determine the preclusive effect of the orders made by the state court in the Foreclosure Action. *City of Canton, Ohio v. Maynard*, 766 F.2d 236, 237-38 (6th Cir. 1985).

"Under Ohio law, the doctrine of res judicata consists of 'the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.'" *Doe ex rel. Doe v. Jackson Local Schs. Sch. Dist.*, 422 F. A'ppx 497, 500 (6th Cir. May 11, 2011) (quoting *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St. 3d 59 (2007)). Claim preclusion, the relevant doctrine in the instant action, "prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action." *O'Nesti*, 113 Ohio St. 3d at 61 (citation omitted). Claim preclusion also bars subsequent actions involving claims which "could have been litigated in the previous suit[.]" *Id.* Claim preclusion includes four elements: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (applying Ohio law) (citation omitted); *see also Portage Cnty. Bd. of Comm'rs v. City of Akron*, 109 Ohio St. 3d 106, 122–23 (Ohio 2006) (citation omitted).

In the Foreclosure Action, the Neffs were personally served with the summons and the foreclosure complaint on January 25, 2011. (Foreclosure Action Docket; ECF No. 14-1). In

9

Ohio, the res judicata analysis is different based upon whether the claims upon which the doctrine is applied were in existence *before* the prior action was filed, or whether the claims are based upon events that occurred *after* the prior action was filed. In this case, nearly all of the Neffs' claims are based on events that occurred prior to the filing of the Foreclosure Action. (Compl.) (alleging events occurring before Jan. 25, 2011: ¶¶14, 15, 22, 25, 28, 33, 38, 40, 42, 43, 48, 52, 57, 77 [3]; after Jan. 25, 2011: ¶¶ 71). After the filing of the Foreclosure Action the Neffs allege only that in July 2011, Mr. Neff spoke with a Flagstar representative who told him that thirty days out from the foreclosure date, his file would "go[] to the top and they [would] work extra hard on getting [him] modified," and in August 2011 a representative of Flagstar "stated to Mr. Neff that it was working on a new agreement for the Neffs." (Neff. Dep. at 105; Compl. ¶ 71.)

### a. Claims Existing at the Time the Foreclosure Action was Filed

Flagstar asserts that the Neffs' claims that existed at the time the Foreclosure Action complaint was served are compulsory counterclaims and were, therefore, required to be brought in the Foreclosure Action. This Court agrees.

Under Ohio law, "[f]ailure to assert a compulsory counterclaim constitutes a form of res judicata and acts as a bar to subsequent litigation." *Jarvis v. Wells Fargo Bank*, No. 09 CO 6, 2010 WL 2749602, at *6 (Ohio Ct. App. June 30, 2010) (citing *Forney v. Climbing Higher Ents., Inc.*, 158 Ohio App. 3d 338 (Ohio Ct. App. 2004); *Quintus v. McClure*, 41 Ohio App.3d 402, 403–404 (Ohio Ct. App. 1987)). As the *Jarvis* court explains "[r]es judicata is particularly

---

[3] In the complaint, the Neffs allege that in a telephone conversation with a Flagstar representative in September 2011 (*i.e.*, after the Foreclosure Action was filed), Mr. Neff was told that he did not need to hire an attorney to represent him in the Foreclosure Action. (Compl. ¶ 77.) However, Mr. Neffs' uncontroverted testimony before this Court establishes that the conversation in which he was told not to retain an attorney occurred in December 2010, after he received a letter threatening foreclosure but *before* the Foreclosure Action was filed. (Neff Dep. at 93.)

10

relevant when a party fails to present compulsory counterclaims pursuant to Civ.R. 13(A), which requires a party to raise all counterclaims against the opposing parties." *Id.* at *5 (citing Ohio R. Civ. P. 13(A)). The court went on to explain that

> "[t]he purpose of [Civ.R. 13(A)] is to settle all related claims in one action and thereby avoid a wasteful multiplicity of litigation on claims which arise from a single transaction or occurrence. *State ex rel. Massaro Corp. v. Franklin Cty. Court of Common Pleas* (1989), 65 Ohio App.3d 428, 430. The rule also provides for an orderly delineation of res judicata, *Cleveland v. A.J. Rose Mfg. Co.* (1993), 89 Ohio App.3d 267, 275, as failure to assert a compulsory counterclaim will result in its being barred in any subsequent action. *Quintus v. McClure* (1987), 41 Ohio App.3d 402, 404." *ATAC Corp. v. Lindsay* (Jan. 16, 1997), 8th Dist. Nos. 70293, 70294, and 70572, at *4.

*Id.* at *6 (*quoting State ex rel. Massaro Corp. v. Franklin Cty. Court of Common Pleas*, 65 Ohio App.3d 428, 430 (Ohio Ct. App. 1989) (parallel citations omitted)).

The Neffs do not directly respond to this argument and, instead, focus on conduct that occurred after the Foreclosure Action was filed. (Mem. in Opp. at 5) ("However, Ohio law is clear that a claim arising from a plaintiff's misconduct during the prosecution of a claim is not barred by res judicata in a subsequent action."). The Neffs also generally contend that their "instant claims arising from Flagstar's misrepresentations involve different facts, dates, evidence, and legal questions than Flagstar's foreclosure action." (Mem. in Opp. at 6; ECF No. 54.) To the extent this argument is directed at events that occurred prior to the serving of the complaint in the Foreclosure Action, the Neffs do not apply the proper test. Rule 13(A) of the Ohio Rules of Civil Procedure provides in relevant part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

"A transaction or occurrence is defined as a 'common nucleus of operative facts.'" *Fifth*

11

*Third Bank v. Hopkins*, 177 Ohio App.3d 114, 118 (Ohio Ct. App. 2008) (quoting *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995)). "That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims." *Grava*, 73 Ohio St.3d at 383 (quoting Restatement (Second) of Judgments § 24 cmt. c (1982)). "The Ohio Supreme Court has used the 'logical relation test'" to decide whether claims, 'arise out of the same transaction or occurrence,' as required by Rule 13(A)." *Id.* at *7 (citing *Rettig Enterprises, Inc. v. Koehler*, 68 Ohio St.3d 274, 278 (1994) ("All existing claims between opposing parties that arise out of the same transaction or occurrence must be litigated in a single lawsuit pursuant to Civ.R. 13(A), no matter which party initiates the action.")). Under this test, "[a] compulsory counterclaim is one which 'is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts.'" *Id.* (citations omitted). "Thus, multiple claims are compulsory counterclaims where they 'involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties.'" *Id.* (citations omitted).

It is apparent that the allegations made in the case *sub judice* are logically related to the Foreclosure Action. In that case, Flagstar alleged that the Neffs defaulted on their mortgage and the Neffs claimed that the default was Flagstar's fault because it promised them a loan modification, they relied on the promise, and Flagstar's failure to provide the modification ultimately led to the Foreclosure Action being filed and a default judgment entered against them. (Neffs' Rule 60(B) Mot. for Relief from Judgment; Neff. Aff.; ECF No. 3-4.) The Neffs assert that after they received a letter from a law firm representing Flagstar in which it indicated that

12

the firm had been instructed to proceed with foreclosure, Flagstar mislead Mr. Neff into believing that they did not need counsel to represent them. *Id.* The allegations made by the Neffs in the action before this Court involve the same factual issues, many of the same legal issues, and are certainly offshoots of the same basic controversy between them and Flagstar that was addressed in the Foreclosure Action. Consequently, the Neffs' allegations based on events that occurred before the filing of the Foreclosure Action are properly considered compulsory counterclaims that the Neffs failed to assert, resulting in them "being barred in any subsequent action." *Jarvis*, 2010 WL 2749602, at *6 (quoting *State ex rel. Massaro Corp. v. Franklin Cty. Court of Common Pleas*, 65 Ohio App.3d 428, 430 (Ohio Ct. App. 1989)). Accordingly the Court **GRANTS** Flagstar's Motion for Summary Judgment on the Neffs' state law claims based upon events that occurred before Flagstar filed the Foreclosure Action.

### b. Claims Based on Events Occurring After the Foreclosure Action was Filed

Flagstar relies, as did this Court in its previous consideration of this issue, upon the cases from the Southern District of Ohio that have consistently held that any claim that a state court judgment was obtained by fraud on the state court during the pendency of the action must be brought as a part of a motion for relief from judgment to the court which rendered the judgment, not through a collateral attack in federal court. *See Thyne v. GMAC Mortg. Corp.*, No. 3:09-cv-377, 2010 U.S. Dist. LEXIS 89591, *12 (S.D. Ohio Aug. 4, 2010) ("If [the plaintiff] believes the Common Pleas judgment was obtained by fraud on that court, her remedy is by way of a motion for relief from judgment under Ohio R. Civ. P. 60(b), not by way of a collateral attack on that court's judgment."); *Kline v. Mortg. Elec. Sec. Sys.*, No. 3:08cv408, 2011 U.S. Dist. LEXIS 30821, *13 (S.D. Ohio Feb. 16, 2011) (following *Thyne*), *Scherer v. JPMorgan Chase & Co.*,

13

No. 2:11-cv-635, 2011 U.S. Dist. LEXIS 149585 (S.D. Ohio December 29, 2011) ("This Court agrees with the *Kline* and *Thyne* decisions and finds that Scherer's argument that the judgment against him was obtained by fraud on the state probate court does nothing to change the nature of the finality of that judgment for preclusion purposes. If Scherer believed that the judgment against him was obtained by a fraud committed on the probate court, that argument should have been made in a Rule 60 motion to that court."); *Sessley v. Wells Fargo Bank, N.A.*, No. 2:11-cv-348, 2012 U.S. Dist. LEXIS 29661, *25 (S.D. Ohio March 6, 2012) (following *Thyne*); *James v. Guaranteed Rate, Inc.*, 2012 U.S. Dist. LEXIS 102406, at *13 (S.D. Ohio July 24, 2012) (following *Thyne*); *Perkins v. Wells Fargo Bank, N.A.*, No. 2:11-cv-952, 2012 WL 5077712, at *7–8 (S.D. Ohio Oct. 18, 2012) (following *Thyne*).

In the present case, however, the Court now determines that it need not rely upon these cases for two reasons. First, the Neffs do not allege that Flagstar committed a fraud on the state court, but rather that Flagstar committed fraud on the Neffs during the course of the state court litigation. Second, in none of these Southern District of Ohio cases did a party file a Ohio Civil Rule 60(B) motion for relief from judgment based upon the actions of the opposing party that occurred *after* the state court case was filed. Here, the Neffs did in fact bring their claims before the state court in a Rule 60(B) motion for relief from judgment, which makes this case more analogous to *Tolliver v. Liberty Mut. Fire Ins. Co.*, No. 2:06-CV-904, 2010 WL 148159, at *2, *5 (S.D. Ohio Jan. 11, 2010) (Neffs' Rule 60(B) Mot. for Relief from Judgment at 3; ECF No. 3-4) (indicating to the state court that after the Foreclosure Action was filed, Mr. Neff "relied on Flagstar's representation that it could help the Neffs save their home").

In *Tolliver*, the plaintiff filed a Rule 60(B) motion for relief from judgment in which he

14

brought to the state trial court's attention the alleged fraudulent misconduct of the defendant that occurred after the case had been filed. The trial court denied that motion and Mr. Tolliver appealed to the state appellate court. The appellate court declined to address the arguments related to fraud that Mr. Tolliver raised in his Rule 60(B) motion. Thus, through no fault of his own, Mr. Tolliver had no opportunity for the state court to review the merits of his claims regarding events that occurred during the state court action. When Mr. Tolliver filed a case in the Southern District of Ohio alleging fraud based on the defendant's conduct during the state court case, the defendant moved for summary judgment on the fraud claim based upon, *inter alia*, the doctrine of res judicata. In considering the prong of the doctrine that requires determination of whether the claim was or could have raised in the state court action, the *Tolliver* court found that it was not met: "While Tolliver attempted to raise the fraud . . . issue on appeal, the state appellate court declined to rule upon" it. *Tolliver*, 2010 WL 148159, at *6 (noting that under Ohio law Mr. Tolliver was not required to amend the complaint to add the fraud claim "because Liberty Mutual's alleged improper conduct had not occurred when the state court complaint was filed"). Here, however, unlike the plaintiff in *Tolliver*, the Neffs chose not to appeal the state trial court's denial of their Rule 60(B) motion for relief from judgment. Thus, unlike the issue before the *Tolliver* court, the issue before this Court is determined by controlling Ohio precedent.

That is, Ohio law is clear that "[a] judgment entry denying a Civ. R. 60(B) motion for relief from judgment is final and appealable, and, where a party fails to file a timely appeal under App. R. 4(A), res judicata applies to bar further litigation of the issues." *GMAC Mtge., L.L.C. v. Lee*, 11AP-796, 2012 WL 949951, at *5 (Ohio Ct. App. Mar. 20, 2012) (citing, *inter alia*,

15

*Deutsche Bank Natl. Trust Co. v. Pandey*, 10AP-39, 2010 WL 3171428, at *3 (Ohio Ct. App. Aug. 12, 2010) ("A judgment denying a motion to vacate judgment is appealable. . . . Failure to appeal the judgment makes it final, and res judicata applies to bar further litigating the issue."); *Colley v. Bazell*, 64 Ohio St.2d 243, 245 (1980) ("However, it is well settled that a judgment denying a motion for relief from judgment filed pursuant to Civ.R. 60(B) is itself a final appealable order.")). Ohio courts regularly explain that when a party fails to file an appeal from a denial of a Rule 60(B) motion, it prevents the trial court from deciding the issue on the merits in the event that the "case might have been remanded." *Herbert v. Huntington Natl. Bank*, No. 25604, 2011-Ohio-3663, 2011 WL 3111975, at *4 (Ohio Ct. App. July 27, 2011) ("Here, Herbert filed a Civ.R. 60(B) motion, but the trial court found the motion untimely. Rather than appealing the denial of the Civ.R. 60(B) motion, he filed a separate lawsuit. Had he appealed the denial of the Civ.R. 60(B) motion, and had this Court reversed, the matter might have been remanded to the trial court for determination on the merits.").

In the instant action, the Neffs filed their Motion for Relief from Judgment in the Foreclosure Action and the state court implicitly denied the motion when it permitted the sheriff's sale of the property to proceed and confirmed that sale. On December 11, 2012, the state court clarified its denial, stating in relevant part:

> To the extent that it was not already evident, the Court implicitly overruled the Motion for Relief from Judgment by allowing the sheriff's sale to proceed and confirming the sale. Accordingly, this Court now expressly confirms that the Motion for Relief from Judgment is **OVERRULED**.

(Entry; ECF No. 48-22) (emphasis in original). The Neffs' choice not to appeal the denial of their Rule 60(B) motion prevented the state appellate court, and the state trial court in the event of reversal and remand, from considering the same allegations regarding Flagstar's conduct after

16

the Foreclosure Action was filed that are now before this Court. Consequently, because the Entry denying the Neffs' Rule 60(B) motion was a final and appealable order, which the Neffs did not appeal, "res judicata applies to bar further litigation of the issues." *GMAC Mtge., L.L.C. v. Lee*, 2012 WL 949951, at 5. Accordingly, the Court **GRANTS** Flagstar's Motion for Summary Judgment on the Neffs' state law claims based upon the events that occurred after Flagstar filed the Foreclosure Action.

## IV.

For the reasons set forth above, the Court **GRANTS** Flagstar's Motion for Summary Judgment (ECF No. 48) and **DENIES** the Neffs' Motion for Oral Argument (ECF No. 56). The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

8-5-2014
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**